296 Ga. 509
FINAL COPY


S14A1331. GLENN v. THE STATE.


HINES, Presiding Justice.

James Michael Glenn III appeals from his convictions and sentences for the felony murder of Cliff Brannon and possession of a firearm during the commission of a crime. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that at 6:00 p.m. on August 26, 2011, James Michael Glenn III and Aaron Weeks were walking down a street when Brannon drove up close behind them. Glenn and Weeks

---

[1] The crimes were committed on August 26, 2011. On February 22, 2012, a Clayton County grand jury indicted Glenn for malice murder, felony murder while in the commission of the crime of aggravated assault, aggravated assault, felony murder while in the commission of the crime of possession of a firearm by a convicted felon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of the crime of aggravated assault. Glenn was tried before a jury October 15-18, 2012, and found not guilty of malice murder, and guilty of felony murder while in the commission of the crime of aggravated assault, aggravated assault, and possession of a firearm during the commission of the crime of aggravated assault; an order of nolle prosequi was entered on the charges of possession of a firearm by a convicted felon and felony murder while in the commission of the crime of possession of a firearm by a convicted felon. On November 16, 2012, Glenn was sentenced to life in prison for felony murder and a consecutive term of five years in prison for possession of a firearm during the commission of the crime of aggravated assault; the aggravated assault charge merged with the crime of felony murder. See *Malcolm v. State*, 263 Ga. 369, 371-374 (5) (434 SE2d 479) (1993). Glenn filed a motion for new trial on November 29, 2012, which he amended on May 3, 2013, and again on June 6, 2013. On December 16, 2013, the motion, as amended, was denied. Glenn filed a notice of appeal on December 20, 2013, and the appeal was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

moved off the road and continued walking, but Brannon again drove up behind them, close enough that the two men believed Brannon's car would hit them. Glenn and Weeks exchanged words with Brannon, who responded by yelling racial slurs and unsuccessfully trying to have his dog attack the two men. Weeks, believing that Brannon was deliberately antagonizing them, walked away; he looked back and saw Brannon inside his car with one hand near the center of the car and his other hand by the door; Glenn was pointing a .25 caliber pistol at the car. Glenn fired several shots onto the street surface in the direction of Brannon's vehicle and then left the area.

Later that evening, Glenn told Weeks that Brannon was "going to get what he deserves." Glenn's roommate saw Glenn come home late that night, load his pistol, and leave. Glenn returned early that morning and set his pistol on the table; later that morning, Glenn told his roommate that he had killed someone, but did not provide any details. On the evening of August 29, 2011, Glenn's roommate contacted a law enforcement detective, and related what he knew. At trial, Glenn testified that, late that night, he ran into Brannon, they argued, Brannon physically attacked him while keeping one hand concealed behind his back, and that he shot Brannon in self-defense, although Brannon never

2

produced a weapon.

At 2:00 a.m. August 27, 2011, law enforcement officers responded to a 911 call from Brannon; he was on the threshold of his residence bleeding heavily from gunshot wounds. Blood spatters were inside Brannon's house, and there was a trail of his blood leading from a site on the street 150 feet from his house; six .25 caliber shell castings were found at that site, and they proved to have been ejected from Glenn's pistol. No weapons were found in Brannon's house or the immediate area. Brannon was taken to a hospital, where he told a law enforcement officer that he was walking his dog when a young black male walked past him, gave him a "funny smile," and then turned and shot him; because of Brannon's pain, he asked that the interview with the officer be postponed, and it was then terminated. Brannon had received three gunshots, to the face, neck, and back, and on September 2, 2011, he died of these wounds without giving a complete interview to the law enforcement officer. During his autopsy, no stippling was found around his wounds, which, despite the passage of time between the wounds and Brannon's death, was some indication that he had not been shot at close range.

1. Glenn contends that the evidence against him was insufficient to prove

beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Specifically, he asserts that the State failed to disprove his affirmative defense of justification in acting in self-defense in shooting Brannon. See *Crane v. State*, 281 Ga. 635, 637 (641 SE2d 795) (2007). "When this Court reviews the sufficiency of the evidence, it does not re-weigh the evidence or resolve conflicts in witness testimony, but instead it defers to the jury's assessment of the weight and credibility of the evidence. [Cit.]" *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010). It is for the jury to resolve conflicts in the evidence and questions of witness credibility, not this Court. *Tolbert v. State*, 282 Ga. 254, 256 (1) (647 SE2d 555) (2007). Although Glenn testified that Brannon acted as though he had a pistol, attacked Glenn with his hands, and that the two men struggled, other evidence was that Glenn expressed a desire for revenge on Brannon, and that Brannon was shot in the back, as well as in the face and neck. The question of justification was a matter for the jury, which was free to reject Glenn's version of the events. *Roper v. State*, 281 Ga. 878, 880 (1) (644 SE2d 120) (2007). The evidence authorized the jury to find Glenn guilty beyond a reasonable doubt of the crimes of which he was

convicted. *Jackson*, supra.

2. Glenn also urges that his trial counsel failed to provide effective representation in that counsel failed to object to the testimony of Brannon's mother, identifying a photograph of Brannon while in life. In order to prevail on a claim of ineffective assistance of counsel, Glenn must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we

5

independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

As this Court has stated, "[t]he general rule is that it is not error to admit a photograph of the victim while in life. [Cit.] However, the better practice is to not permit a victim's family member to identify the victim where other nonrelated witnesses are able to do so. [Cit.]" *Ledford v. State*, 264 Ga. 60, 66 (14) (439 SE2d 917) (1994).[2]  Trial counsel testified that he did not object because the focus of the defense was to be Glenn's claim of self-defense, and he did not believe that identification of the victim was an issue.  The purpose of this Court's cautions regarding having a family member identify a photograph of the victim in life

> is the risk of a family member's emotional outburst during trial. [Cit.] In this case, the victim's mother did not become emotional when identifying her [son's] photo. Hence, we find no harm resulting from counsel's failure to object to her testimony identifying the victim's photo. [Cit.]

*Kilpatrick v. State*, 276 Ga. 151, 153 (2) (575 SE2d 478) (2003).  Accordingly,

---

[2] Although Glenn posits that a police officer or the medical examiner could have identified a photograph of Brannon while in life, during the hearing on his motion for new trial, he produced no evidence that such was the case.  See *Reaves v. State*, 292 Ga. 545, 550 (4) (739 SE2d 368) (2013).

it was not error for the trial court to deny the motion for new trial on the ground of ineffective assistance of counsel.

Judgments affirmed. All the Justices concur.

Decided February 16, 2015.

Murder. Clayton Superior Court. Before Judge Carter.

Jennifer A. Trieshmann, for appellant.

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.