## S12A1311. POWELL v. THE STATE.

(733 SE2d 294)

BLACKWELL, Justice.

Marquez Powell was tried by a Fulton County jury and convicted of the murder of Shah Walton, as well as possession of a firearm during the commission of a felony. Following the denial of his motion for new trial, Powell appeals, contending that the evidence is insufficient to sustain his convictions, that the prosecuting attorney made improper and prejudicial remarks in her closing argument, and that the court below impermissibly allowed the State to constructively amend the indictment at trial. Upon our review of the briefs and the record, we find no reversible error, and we affirm.[1]

1. Viewed in the light most favorable to the prosecution, the evidence shows that Walton, Powell, and Jacques Shockley were

---

[1] The events that form the basis for the convictions occurred on April 18, 2005. Powell was indicted on September 9, 2005 and charged with one count each of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime. The trial commenced on September 22, 2008, and the jury returned its verdict on September 24, 2008, finding Powell guilty on all counts. The felony murder conviction was vacated by operation of law, and the court below merged the aggravated assault into the conviction for malice murder. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Powell was sentenced to imprisonment for life for malice murder and a suspended term of five years for possession of a firearm during the commission of a felony (consecutive to the life sentence). Powell filed his motion for new trial on September 29, 2008, amended it on March 10, 2011, and amended it again on October 17, 2011. The court below denied the motion for new trial as amended on January 24, 2012. Powell timely filed his notice of appeal on January 25, 2012, and the case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

traveling together in a car on the evening of April 18, 2005. Walton was driving, Powell was seated behind Walton, and Shockley was seated in the front passenger seat. Two witnesses saw the car stop suddenly in the road, and the witnesses saw two men exit the car on the passenger side, stand together for a moment at the front of the car, and then flee from the scene together on foot. After the passengers fled, the witnesses approached the car and found Walton, who had been shot in the head at close range. Walton died as a result of the gunshot wound. After the shooting, Powell went to the home of a friend, a few blocks from the scene of the shooting, and Shockley went to the same house, although he arrived after Powell. Notwithstanding that Powell later described Walton as a close friend, Powell did not notify law enforcement that his friend had been shot, and he instead called his sister, who picked him up and took him to the home of his mother.

A month after the shooting, an Atlanta Police detective interviewed Powell, who denied that he had met with Walton in a parking lot shortly before the shooting and that he was in the car with Walton at the time of the shooting. Powell told the detective that Shockley and a man known as "Dee" were with Walton when he was shot. Powell also said that he had only met Shockley on the day of the shooting. About a week later, the detective confronted Powell with additional evidence, and Powell admitted that he had, in fact, met with Walton in a parking lot before the shooting. A couple of weeks after that, the detective confronted Powell with further evidence, and Powell admitted that he had been in the car at the time of the shooting, that he had lied about "Dee," and that he had known Shockley for about a year. At trial, Powell testified that he and Shockley were dealing drugs on the evening of the shooting, that he exited the car to transact a drug deal, that Walton had a gun in his lap when Powell exited the car, that Walton had been shot by the time Powell returned to the car, and that Powell hid in some bushes until he saw Shockley exit the car and run away. Powell also testified that he was distraught after the shooting of Walton, his close friend.

On appeal, Powell claims that the evidence is insufficient to sustain his convictions because no evidence shows that he fired the fatal shot or was a party to the firing of the fatal shot. We disagree. "[A] person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it." *Walsh v. State*, 269 Ga. 427, 429 (1) (499 SE2d 332) (1998) (citation omitted). See also OCGA § 16-2-20 (b) (defining parties to a crime). Although mere presence at the scene of a crime is not sufficient to prove that one was a party to the crime, "presence,

companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *Brown v. State*, 288 Ga. 902, 904 (2) (708 SE2d 294) (2011) (citation and punctuation omitted). See also *Hill v. State*, 281 Ga. 795, 797 (1) (a) (642 SE2d 64) (2007); *Simpson v. State*, 265 Ga. 665, 665-666 (461 SE2d 210) (1995). Here, even assuming that Shockley, not Powell, fired the fatal shot, the evidence shows that Powell and Shockley were engaged in a common enterprise at the time of the shooting, that Powell was in the car at the time of the shooting but failed to summon any help for Walton, and that Powell and Shockley stood together at the front of the car after the shooting, ran off together, and eventually made their ways to the same place. The evidence also shows that Powell "repeatedly gave false statements to the investigator." *Mutazz v. State*, 290 Ga. 389, 390 (1) (722 SE2d 47) (2012). See also *Brown*, 288 Ga. at 904-905 (2). Although Powell claimed at trial that he had nothing to do with Shockley shooting Walton and that he was, in fact, afraid of Shockley, it was for the jury to assess the credibility of this testimony. See *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010). One reasonably might infer from the evidence that Powell and Shockley shared a criminal intent with respect to the shooting, and for this reason, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Powell was a party to the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). See also *Mutazz*, 290 Ga. at 390 (1); *Brown*, 288 Ga. at 904-905 (2).

2. In her closing argument, the prosecuting attorney said that prosecutors do not seek the indictment of persons whom they believe to be innocent:

> If we think it's a bad arrest, if we think there's not enough evidence, what happens to that case? It goes. We don't bring it to indictment if we think the person is innocent, if there is not enough evidence.

We agree with Powell that these remarks were improper. See *DaNamur v. State*, 156 Ga. App. 270, 270 (1) (274 SE2d 673) (1980) (improper for prosecutor to ask in closing argument "[w]ho wants to prosecute innocent people?"). Courts have correctly chastised prosecutors

> for arguing or even suggesting that "the government only prosecutes guilty people." This line of argument is forbidden

because it implies that the prosecutor reached the determination that the defendant is guilty before trial and that the jury should weigh this fact in making its determination.

*United States v. Stefan*, 784 F2d 1093, 1100 (11th Cir. 1986). Nevertheless, we conclude that the improper remarks of the prosecuting attorney in this case form no basis for a reversal of the judgment below.

(a) Powell contends that the court below should have rebuked the prosecuting attorney for her improper remarks and should have given a curative instruction to the jury. But his lawyer "did not object to the now challenged comments by the prosecutor. In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) (citations and punctuation omitted). And a trial judge has no obligation under OCGA § 17-8-75 to rebuke a prosecuting attorney or give a curative instruction in the absence of a timely objection. See id.; *Simmons v. State*, 281 Ga. 437, 438 (4) (637 SE2d 709) (2006). Compare *O'Neal v. State*, 288 Ga. 219, 221-222 (1) (702 SE2d 288) (2010).

(b) Powell also contends that the failure of his lawyer to object to the improper argument of the prosecuting attorney deprived him of the effective assistance of counsel. To prevail on a claim of ineffective assistance, Powell must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Powell must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. See id. at 687-688 (III) (A); see also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Powell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B); see also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). Powell, we conclude, has failed to carry his burden.

Notwithstanding that the challenged remarks of the prosecuting attorney were highly improper, it is important to view those remarks

not in isolation, but in their proper context. See *Alexander v. State*, 263 Ga. 474, 478 (2) (d) (435 SE2d 187) (1993); see also *Stefan*, 784 F2d at 1100. By the time the prosecuting attorney made those remarks, Powell's lawyer already had delivered his closing argument, and he had argued that the evidence showed that the detective responsible for the investigation of the shooting had taken a warrant for Shockley, but not for Powell. That was a fair point for the lawyer to make, but then he went beyond the evidence, speculating about the reasons for the prosecuting attorney having sought to indict Powell. When the time came for the prosecuting attorney to give her closing argument, she understandably attempted to respond to the earlier speculation about why Powell had been indicted. Just before she made the improper remarks at issue, the prosecuting attorney explained that the responsibility for charging decisions belongs ultimately to the district attorney, not police officers. And immediately following the improper remarks, the prosecuting attorney said that it was for the jury — not the district attorney, and not the detective — to decide whether Powell was guilty of the crimes with which he was charged. It seems rather "obvious that the [improper] remarks made by the [S]tate were in response to those made by the defense." *Keen v. State*, 164 Ga. App. 81, 88 (7) (296 SE2d 91) (1982). And although "two improper arguments — two apparent wrongs — do not make for a right result," *United States v. Young*, 470 U. S. 1, 11 (III) (105 SC 1038, 84 LE2d 1) (1985), we must keep this context in mind as we consider whether the failure of Powell's lawyer to object to the improper argument of the prosecuting attorney amounts to ineffective assistance under *Strickland*.

About deficient performance, the first element of ineffective assistance, we recall the admonition of the United States Supreme Court that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that we

> must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U. S. at 689 (III) (A) (citation and punctuation omitted). At the hearing on the motion for new trial, Powell's lawyer testified with respect to his failure to object to the improper closing argument that "it looks like I just let it get by," and he said that his failure to object did not appear to have been part of any strategy. But

the lawyer admitted on cross-examination that the improper argument of the prosecuting attorney might have been in response to his own closing argument and that the prosecuting attorney was correct that the ultimate decision about guilt is properly left to the jury. While Powell's lawyer could have objected to the improper remarks of the prosecuting attorney, he was "obviously vulnerable" to an unfavorable result. *Young*, 470 U. S. at 13 (III). If he had objected, the trial judge would have rebuked the prosecuting attorney, but the judge might also have properly rebuked Powell's lawyer for his earlier speculation about the motives of the prosecuting attorney that invited her improper remarks in the first place. In these circumstances, a defense lawyer might reasonably conclude that little would be gained by an objection.[2] See *Contreras v. State*, 314 Ga. App. 825, 829 (3) (726 SE2d 107) (2012). Powell has not overcome the "strong presumption" that the failure of his lawyer to object fell "within the wide range of reasonable professional assistance," and consequently, Powell has failed to carry his burden to show that this omission was objectively unreasonable.

Moreover, even if the failure of his lawyer to object might amount to deficient performance, Powell has not shown that he was prejudiced by that failure. The speculative remarks by his lawyer about the motives of the prosecuting attorney "were improper and, although they drew no objection, they certainly invited response." *Keen*, 164 Ga. App. at 88 (7). Indeed, the prosecutor "was entitled to respond to defense counsel's remarks." *Humphrey v. Lewis*, 291 Ga. 202, 215 (V) (A) (ii) (728 SE2d 603) (2012) (citation omitted). As we already have explained, the closing argument of the prosecuting attorney was improper, and two wrongs do not make a right. *Young*, 470 U. S. at 11 (III). But under the "invited response" or "invited reply" doctrine,

---

[2] That Powell's lawyer recalled no strategic thinking that might have motivated him to decline to object is of no moment. "[A]lthough the thinking of the lawyer may be relevant to our inquiry, we must remember that our inquiry properly is focused on what the lawyer did or did not do, not what he thought or did not think." *Shields v. State*, 307 Ga. App. 830, 831-832 (1) (a) (706 SE2d 187) (2011) (footnote omitted). In *Strickland*, the United States Supreme Court said that

> [a] convicted defendant making a claim of ineffective assistance must identify the *acts or omissions* of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified *acts or omissions* were outside the wide range of professionally competent assistance.

466 U. S. at 690 (III) (A) (emphasis supplied); see also *Harrington v. Richter*, ___ U. S. ___ (IV) (A) (1) (131 SC 770, 178 LE2d 624) (2011) ("*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."). In other words, it is the *conduct* of the lawyer, not his *thinking*, that we assess for reasonableness, even though the thinking of the lawyer may inform the reasonableness of his conduct.

inappropriate prosecutorial comments ordinarily do not amount to prejudicial error if, taken in context, they were "invited" by "defense counsel's opening salvo" and "did no more than respond substantially in order to 'right the scale.'" Id. at 12-13 (III) (footnote omitted). We conclude that, viewed in context, the improper remarks of the prosecuting attorney did not undermine the fundamental fairness of the trial, and any potential harm "was mitigated by the jury's understanding that the prosecutor was countering defense counsel's . . . attack[ ] on the prosecution's integrity." Id. at 17 (IV). See also *Stefan*, 784 F2d at 1100 ("the harm inflicted by the prosecutor's improper remarks was lessened by the jury's understanding that the prosecutor's remarks were an invited response"). The argument by Powell's lawyer and the response to that argument by the prosecuting attorney "amounted to but little more than a personal altercation between opposing counsel, and left the jury practically free to draw their own inferences from the facts actually proved in the case." *Bowens v. State*, 106 Ga. 760, 764 (5) (32 SE 666) (1899). Moreover, at the close of the case, the trial court specifically instructed the jury that neither the indictment nor closing arguments should be considered as evidence. See *Callahan v. State*, 280 Ga. App. 323, 328 (1) (d) (634 SE2d 102) (2006). In these circumstances, Powell has failed to show a reasonable likelihood that, absent the failure of his lawyer to object to the improper remarks by the prosecuting attorney, the outcome of the trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B).

3. Powell also contends that the indictment was constructively amended at trial, apparently based on the argument of the prosecuting attorney that robbery was the motive for the murder of Walton. Robbery not having been charged in the indictment, Powell implies that this constructive amendment permitted the jury to convict him of felony murder and aggravated assault based on a legal theory that was not charged. But because the convictions for felony murder and aggravated assault were either vacated by operation of law or merged into the malice murder conviction, the claim that the indictment was improperly amended is moot. *Darville v. State*, 289 Ga. 698, 700 (3) (715 SE2d 110) (2011); *Parker v. State*, 282 Ga. 897, 899 (4) (655 SE2d 582) (2008). For the same reason, the additional claim that Powell was deprived of the effective assistance of counsel when his lawyer failed to object to the alleged constructive amendment of the indictment also is moot. *Darville*, 289 Ga. at 702 (4) (b).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 15, 2012.

*Long Dai Vo, Tyler R. Conklin,* for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant District Attorney,* for appellee.